UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACCESS BIOLOGICALS, LLC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>XPO LOGISTICS, LLC,<br><br>　　　　Defendant. | No. 2:19-cv-01964-JAM-DB<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS OR TRANSFER** |

Access Biologicals, LLC ("Access") filed suit against XPO Logistics, LLC ("XPOL") in September 2019. Compl., ECF No. 1. Access alleges XPOL's improper delivery of an order of fetal bovine serum amounted to negligence, a breach of contract, and a violation of the Carmack Amendment, 49 U.S.C. § 14706. Compl. ¶¶ 18-59. Access raised these claims on its own behalf and as Life Technology, Inc.'s ("LTI") assignee. Id.

XPOL filed a motion to dismiss or transfer Access's suit.[1] Mot. to Dismiss or Transfer ("Mot."), ECF No. 9. XPOL argues each claim arises under a February 2, 2016 contract it entered with LTI. Mot. at 5. This contract incorporated a forum selection clause by way of XPOL's "Standard Terms and Conditions." Id. XPOL contends this clause required Access to file its suit in North Carolina. Id. at 5-6. Access filed an opposition to XPOL's motion, ECF No. 18, and XPOL filed a reply, ECF No. 21. Because XPOL's reply introduced new evidence and raised new legal arguments, the Court granted Access's request to file a surreply. See Plf.'s Ex parte Application, ECF No. 25; Feb. 10, 2020 Minute Order, ECF No. 26; see also Plf.'s Surreply, ECF No. 27.

The Court finds XPOL failed to show that its February 2, 2016 contract with LTI covered the shipment of fetal bovine serum at issue here. XPOL similarly fell short of identifying any other basis for subjecting Access to the forum selection clause contained in XPOL's terms and conditions. For these reasons, the Court denies XPOL's motion to dismiss or transfer venue.

## I. BACKGROUND

In October 2016, Access purchased 1200 liters of fetal bovine serum from LTI, to be delivered to Access's contractor J.R. Scientific. Compl. ¶ 10. LTI then hired XPOL to transport the order from LTI's facility in Grand Island New York to J.R.

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was scheduled for February 11, 2020.

Scientific in Woodland, California. Compl. ¶ 11.

On January 6, 2017, XPOL's subcontractor picked up the order at LTI's facility and began the cross-country delivery. Compl. ¶ 14. The subcontractor arrived in Woodland, California six days later. Compl. ¶15. The parties dispute exactly what happened to the shipment en route, but ultimately, the USDA ordered that the entire order be destroyed. See Compl. ¶¶ 14-15; Mot. at 3. Access contends the destruction of their order resulted in a $298,935 loss. Compl. ¶ 15. LTI filed a claim with XPOL to recoup this loss, but XPOL denied it. Compl. ¶ 16. LTI then assigned its claims to Access. Compl. ¶ 17.

## II. OPINION

### A. Analysis

Forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972). A motion to dismiss premised upon the enforcement of a forum selection clause amounts to a Rule 12(b)(3) motion to dismiss for improper venue. Arugueta v. Banco Mexicano, S.A., 87 F.3d 320, 324 (9th Cir. 1996). Rule 12(b)(3) motions, unlike Rule 12(b)(6) motions, do not require courts to accept all of the allegations in the complaint as true. Id. (citing Carnival Cruise Lines v. Shute, 499 U.S. 5858 (1991)). Indeed, a party opposing the enforcement of a forum selection clause must generally produce "some evidence . . . to establish fraud, undue influence, overweening bargaining power, or such serious inconvenience in

litigating the selected forum so as to deprive that party of a meaningful day in court." Argueta, 87 F.3d at 324 (quoting Pelleport Investors, Inc. v. Budco Quality Theaters, Inc., 741 F.2d 273, 280 (9th Cir. 1984), abrogated on other grounds by Powerpex Corp. v. Reliant Energy Services, Inc., 551 U.S. 224, 235-36 (2007) (emphasis in original)). Here, however, Access avoids this heavy burden of production because XPOL failed to identify a forum selection clause that covers Access's claims.

As Access argues, "[i]n resolving a motion to transfer involving a forum-selection clause, '[t]he threshold issue is whether the forum-selection clause applies to Plaintiff's claims." Opp'n at 4 (quoting Henry v. Cent. Freight Lines, Inc., No. 2:16-cv-00280-JAM-EFB, 2017 WL 4517836, at *2 (E.D. Cal. Oct. 10, 2017)). XPOL contends its February 2016 contract with LTI sets forth the agreed-upon terms for the January 2017 shipment from Grand Island to Woodland. Mot. at 5-6. In support of this position, XPOL focuses on a single sentence within the agreement: "Except as modified herein, any transportation or logistics services provided by XPOL are subjected to XPOL's standard terms and conditions . . . ." Id. at 5 (citing Ex. A to Perry Decl., ECF No. 19). XPOL's standard terms and conditions, in turn, contain a forum selection clause requiring the parties to file suit in North Carolina "in the event of any disagreement or dispute." Mot. at 5-6 (quoting Ex. A. to Perry Decl. at 16). XPOL contends its shipment from LTI's Grand Island facility to J.R. Scientific plainly falls within the category of "any transportation or logistics services." Mot. 3-4.

Access urges the Court to, instead, interpret the sentence XPOL identified in context of the broader document. Opp'n at 4-6. The Court finds Access's method of contract interpretation is the proper one. See Lennar Mare Island, LLC v. Steadfast Insurance Co., 176 F. Supp. 3d 949, 955 (E.D. Cal. 2016). Using this approach, the relevant portion of the contract reads:

> Purpose:
> The standard operating procedures of this document have been established between Life Technologies and XPOL to define agreed best practices for the administration and transportation of Life Technologies' shipments as shown in Schedule 1.
>
> Scope:
> XPOL will arrange with third party independent contractor licensed motor carriers ("Carriers") for truckload transportation of Life Technologies' shipments, in the laneways specified in Schedule 1, for the rates and terms specified therein, in accordance with the requirements set out herein. Life Technologies' shipments shall be transported as "exclusive use" shipments, meaning no other shippers' freight may be transported in the same trailer at the same time as Life Technologies' shipments. Except as modified herein, any transportation or logistics services provided by XPOL are subject to XPOL's standard terms and conditions . . . . Current version at Effective Date is attached as Schedule 2.

Ex. A to Perry Decl. at 1. The Schedule 1 attachment lists two laneways—one between Grand Island, NY and Chester, NY; the other between Grand Island, NY and Charlottetown, PE. Id. at 3.

The February 2016 contract's plain language states that the purpose of the agreement was to "define agreed best practices for the administration and transportation of Life Technologies' shipments as shown in Schedule 1." Ex. A to Perry Decl. at 1. Schedule 1 does not include a laneway between Grand Island, NY and Woodland, CA. The Court would have to adopt an unnecessarily strained reading of the contract to find that its

5

terms nonetheless govern this unenumerated route.  The more
natural interpretation of the seemingly-broad language XPOL
identifies is that any transportation or logistics services
provided by XPOL <u>for the laneways listed in Schedule 1</u> are
subject to XPOL's terms and conditions.  Accordingly, the Court
finds that the forum selection clause incorporated into the
February 2, 2016 contract does not apply to any claims arising
out of XPOL's January 2017 shipment to Woodland, CA.

   The Rate Confirmation Sheet XPOL discusses in its reply
brief does not alter the Court's conclusion.  <u>See</u> Reply at 3-4.
After LTI hired XPOL to transport Access's order of fetal bovine
serum to California, XPOL sent LTI a Rate confirmation Sheet.
<u>Id.</u>  This form included a disclosure purporting to subject "any
transportation brokerage and/or other transportation
intermediary-related services provided by XPO" to the company's
"Customer Standard Terms and Conditions."  Ex. A to Supp. Perry
Decl., ECF No. 22.  Although it is not entirely clear from the
reply, XPOL seems to argue that this disclosure either (1)
reinforces the notion that the February 2016 contract bound the
January 2017 shipment to XPOL's terms and conditions; or (2)
provides an independent contractual basis for subjecting the
January 2017 shipment to XPOL's terms and conditions.  <u>See</u> Reply
at 3-5.  The Court does not find either argument persuasive.

   First, as Access argues, the fact that the February 2016
contract and the Rate Confirmation Sheet for the January 2017
order both reference XPOL's terms and conditions does little to
suggest the 2016 contract governed the 2017 shipment.  The sheet
does not reference the February 2016 contract or any of the

1 | laneways listed in Schedule 1 of that agreement.  The Court
2 | lacks any basis for viewing these two distinct arrangements as
3 | one.  Second, the Rate Confirmation Sheet does not stand as its
4 | own contract.  XPOL maintains that, based on its terms and
5 | conditions, LTI agreed to be bound by XPOL's terms and
6 | conditions when it tendered the fetal bovine serum to XPOL's
7 | subcontractor.  Reply at 4-5 (quoting Ex. A to Perry Decl. at
8 | 5).  Tautologically, this argument uses standards set forth in
9 | XPOL's terms to determine that LTI was bound by XPOL's terms.
10 | The Court is not convinced.

XPOL's central critique is that Access is trying to have its cake and eat it too—that Access claims the February 2016 contract to invoke its benefits but then disavows the agreement to avoid its obligations.  But the Court does not find any indication that Access's suit flows from rights the February 2016 contract created.  Because XPOL failed to identify a forum-selection clause that applies to Access's claims, the Court denies XPOL's Rule 12(b)(3) motion.

B. Page Limits

The Court's Order re Filing Requirements ("Order"), ECF No. 4-2, limits memoranda in support of and opposition to motions to dismiss to fifteen pages.  Order at 1.  It limits reply memoranda to five pages.  Id.  A violation of the Order requires the offending counsel (not the client) to pay $50.00 per page over the page limit to the Clerk of Court.  Id.  Moreover, the Court does not consider arguments made past the page limit.  Id.  XPOL's brief exceeded the page limit by three pages.  XPOL's counsel must therefore send a check payable to the Clerk for the

Eastern District of California for $150.00 no later than seven days from the date of this Order.

III. ORDER

For the reasons set forth above, the Court DENIES XPOL's motion to dismiss or transfer Access's suit.

IT IS SO ORDERED.

Dated: March 6, 2020

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE